IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TROY A LEWIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:23-cv-1074 (RDA/JFA) |
| CARLOS DEL TORO, Secretary of the Navy, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 16; 19) in this Administrative Procedure Act ("APA") suit for review of final agency action. The Court dispenses with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the administrative record, the parties' motions for summary judgment, and the parties' briefing, the Court DENIES Plaintiff Troy A. Lewis' Motion for Summary Judgment (Dkt. 16) and GRANTS Defendant Carlos Del Toro's Motion for Summary Judgment (Dkt. 19) for the reasons that follow.

### I. BACKGROUND

The instant case involves a Board of Inquiry's ("BOI") decision to separate Plaintiff Troy A. Lewis ("Plaintiff") from active-duty service in the U.S. Navy and the Board for Correction of Naval Records' ("BCNR") subsequent refusal to reinstate Plaintiff on review of that decision. Following a brief overview of the statutory and regulatory background, the factual and procedural history of the instant case are summarized below.

A. Statutory and Regulatory Background

1. BOI

When a branch of the U.S. military seeks to remove an officer from its ranks before the end of that officer's period of commitment, it must follow a congressionally-created administrative mechanism—known as a BOI—to determine whether such a removal is appropriate:

> The Secretary of the military Department concerned shall convene boards of inquiry . . . to receive evidence and make findings and recommendations as to whether an officer . . . should be retained on active duty.

10 U.S.C. § 1182(a).

Congress delegated to the Secretaries of each Military Department the authority to promulgate regulations concerning the procedural operation of these BOIs. *Id.* § 1181(b). The Secretary of the Navy exercised his statutory authority in this regard by promulgating SECNAV Instruction 1920.6C, which provides "policies, standards, and procedures for the administrative separation of Navy and Marine Corps officers from the Naval Service." *SECNAVINST* 1920.6C, § 1 (Dec. 15, 2005). The regulation provides that "[o]fficers who do not maintain required standards of performance or professional or personal conduct may be processed for separation for cause" through a BOI "when there is reason to believe" that certain enumerated "circumstances exist." *Id.* enc.1, § 1. Amongst those enumerated circumstances is "[p]erformance or personal or professional conduct . . . which is unbecoming an officer," including—as relevant here— "[c]ommission of a military or civilian offense which could be punished by confinement of 6 months or more," "[s]exual perversion," and "[c]onviction by civil authorities [] . . . which would amount to an offense under the [Uniform Code of Military Justice]." *Id.* enc.1, § 1(b)(1), (3).

A commanding officer is required to report to certain identified senior Navy officials any incident involving a naval officer for which "processing for separation may be appropriate." *Id.*

2

enc.4, § 1. Those senior Navy officials then review the available information about the incident in question and determine whether to initiate a BOI and order the naval officer to show cause as to why he should be retained on active duty. *Id.* enc.4, § 2. The Navy must provide notice to the officer that explains, *inter alia*, that a BOI will be convened (including the reasons for convening the BOI), and that he has the right to submit a responsive statement to the BOI and to consult with (and be represented before the BOI by) competent counsel—either one retained at his own expense or appointed by the Navy. *Id.* enc.8, §§ 5-6.

Each BOI "consist[s] of not less than three officers in the same Armed Force as the" officer in question, each of whom must "be [a] highly qualified and experienced officer[] in the grade of O5 or above" with one member required to be "in the grade of O6 or above." *Id.* enc.8, § 4(a). The senior member serves as the presiding officer at the BOI hearing, and "rule[s] on all matters of procedure and evidence," although a majority of the other members of the BOI may overrule him or her. *Id.* enc.8, § 4(i). Witnesses may be called to testify under oath at a BOI hearing, and the officer-respondent or his counsel may ask questions of each such witness. *Id.* enc.8, § 6(i). After any pertinent evidence (whether through oral testimony or otherwise) has been submitted, and the officer or his counsel has provided any argument in support of retention, the BOI then votes to determine (1) whether the reasons specified in the notification have been proven; (2) if so, whether to separate the officer from active duty; and (3) if so, the recommended characterization of the officer's service. *Id.* enc.8, § 11(a). Relevant here, however, the regulation expressly provides that "where a reason for separation is based on an approved finding of guilty by a court-martial or a civilian criminal conviction, such a finding of guilty or criminal conviction shall be binding on the BOI." *Id.*

## 2. BCNR

A military member dissatisfied with a BOI's decision on separation may seek relief from the BCNR, an administrative tribunal within the Department of the Navy. *Brezler v. Mills*, 220 F. Supp. 3d 303, 309 (E.D.N.Y. 2016). Congress has vested the Secretaries of the Military branches, including the Secretary of the Navy, with the discretion to decide whether to correct a military member's records to remedy an "error" or "injustice," and if so, the manner of any such correction:

> The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.

10 U.S.C. § 1552(a)(1). Congress specified that the military Secretaries were to exercise this discretion "through boards of civilians" within the particular "military department." *Id.* § 1552(a)(2). Congress mandated that a military member file a "request for [] correction within three years after discovering the error or injustice." *Id.* § 1552(b).

To implement this congressional directive, the Secretary of the Navy created the BCNR. *SECNAVINST* 5420.193, § 2(a). In order to seek relief, a military member must first submit a written and signed application to the BCNR using a particular form (known as a "DD 149") that requires the member to identify the particular "error" or "injustice" alleged and the reason why the BCNR should make the requested correction. *Id.* § 3(a). The application is then "reviewed by a three-member panel . . . to determine whether to authorize a hearing, recommend that the records be corrected without a hearing, or to deny the application without a hearing." *Id.* § 3(e)(1).

In making this determination, consistent with his statutory grant of authority, the Secretary of the Navy has expressly authorized the BCNR to "deny an application . . . if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice." *Id.* § 3(e)(2). If a BCNR panel determines (by majority vote) to deny the application, it must

4

provide a written "statement of the grounds for denial" that "include[s] the reasons for the determination that relief should not be granted." *Id.* § 3(e)(3), (4). That statement must attach "any advisory opinion" that the BCNR obtained from another naval component concerning the issues raised in the member's application that it considered in making its determination. *Id.* § 3(e)(4). The BCNR must then transmit the statement and any attachments to the member and (if applicable) his counsel. *Id.* §§ 3(e)(5), 8(b).

The military member, if dissatisfied with the BCNR's determination, may then request reconsideration. *Id.* § 9. Any such request for reconsideration can only be granted on the basis of "materials not previously presented to or considered by the" BCNR. 10 U.S.C. § 1552(a)(3)(D); *see also SECNAVINST* 5420.193, § 9 (noting that reconsideration requests must be based "upon presentation by the applicant of new and material evidence or other matter not previously considered by the" BCNR).

### B. Factual[1] and Procedural Background

#### 1. Plaintiff's Career in the U.S. Navy

Plaintiff first enlisted in the U.S. Navy in February of 1987 as a Corpsman. AR27-32. After a series of tours of duty and re-enlistments, Plaintiff was accepted into the military's medical school—the Uniformed Services University of the Health Sciences. AR14. As part of his medical

---

[1] The facts set forth in this section are taken from the uncontradicted administrative record ("AR") submitted to the Court as well as the Court's review of the judicial records referenced in the briefings in this case. *See Krichbaum v. Kelley*, 844 F. Supp. 1107, 1110 (W.D. Va. 1994) ("When the court, as here, reviews the decision reached by an administrative agency, the summary judgment motion stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review."), *aff'd*, 61 F.3d 900 (4th Cir. 1995); *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that federal courts "may properly take judicial notice of matters of public record"); *Colonial Penn. Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that the most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records." (internal quotation omitted)).

school matriculation, Plaintiff was commissioned as a naval officer in the grade of Ensign in June 2002. AR16-17.

### 2. Plaintiff's Federal Criminal Conviction

On April 23, 2007, near the end of Plaintiff's medical education, the DC Metropolitan Police arrested him in the District of Columbia. AR321. On May 2, 2007, a federal grand jury empaneled in the U.S. District Court for the District of Columbia indicted Plaintiff on two counts: (1) attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b); and (2) traveling with intent to engage in sexual contact with a minor, in violation of 18 U.S.C. § 2423(b). AR148-49. A jury trial on those charges took place in that District in September of 2007, with the jury returning a verdict of guilty on both charges on September 19, 2007. *United States v. Lewis*, 1:07-cr-119 (D.D.C.). On December 19, 2007, the district court sentenced Plaintiff to a 151-month term of incarceration. *Id.* Plaintiff noticed an appeal from the district court's judgment of conviction to the U.S. Court of Appeals for the District of Columbia Circuit. *Id.* at Dkt. 27. On January 29, 2009, the U.S. Court of Appeals for the District of Columbia Circuit affirmed Plaintiff's conviction and sentence. *United States v. Lewis*, 318 Fed. Appx. 1 (D.C. Cir.) (per curiam), *cert. denied*, 558 U.S. 867 (2009).

### 3. BOI

After Plaintiff's conviction, the Navy commenced the process of administratively separating Plaintiff from military service by convening a BOI. On July 31, 2008, the Navy transmitted to Plaintiff—via mail to his then-understood prison location—the documents necessary to provide him with notice of the BOI. AR 211. On September 17, 2008, a naval officer and enlisted sailor traveled to Plaintiff's institution of confinement to hand-deliver a copy of that same documentation to Plaintiff. AR406. The three-member BOI considering Plaintiff's

separation from naval service convened on June 9, 2009—after the D.C. Circuit had affirmed Plaintiff's convictions on review—and conducted an on-the-record hearing. AR454. Throughout the hearing, Plaintiff was represented by retained counsel. AR408. But, because of his incarcerated status, Plaintiff did not appear in person at the hearing. AR409. Plaintiff was, however, able to provide a personal statement in his own defense to the BOI for its consideration. AR407-54. Still, at the hearing, Plaintiff's counsel objected to the BOI proceeding in Plaintiff's absence. AR409. Counsel for Plaintiff further argued that, while Plaintiff's criminal convictions, if upheld, would readily justify separation, the BOI should wait to act until Plaintiff's attempt to secure *certiorari* from the Supreme Court on his direct appeal and his forthcoming request for collateral review of his conviction were completed:

> Gentlemen, the things that you're going to read about today, and you're going to hear about [] heinous and [] reprehensible crimes, there is no question about that. And it would be foolish, and perhaps even downright irresponsible, for me to sit here before you and tell you that, in light of these heinous and [] reprehensible crimes, you should retain this service member. It would be ridiculous, and I, in good conscience, couldn't do it, if we had a definitive answer to whether or not those crimes had been committed.
>
> If we had a definitive answer to whether or not those crimes had been committed, I would encourage you to separate Ensign Lewis this morning, and I would encourage you to separate him with an other than honorable discharge. As someone who wears the uniform, I don't know that there's any other choice.

AR417-18.

During the hearing, consistent with his above-mentioned theory, Plaintiff's counsel called two witnesses to provide live witness testimony: (1) Plaintiff's then-criminal counsel regarding his future chance of success in obtaining *vacatur* of his federal criminal convictions; and (2) another naval officer with whom Plaintiff had worked regarding how the conduct that formed the basis of Plaintiff's convictions was out of character. AR 428-42. Counsel for Plaintiff also introduced numerous documentary exhibits, primarily consisting of character references and the credentials

7

of the attorney who represented Plaintiff at his criminal trial. AR425. Finally, Plaintiff's counsel read a written statement from Plaintiff into the BOI record. AR442. That statement echoed his counsel's arguments; namely, that Plaintiff was hopeful that he would receive a "dismissal of the charges and case" against him in future proceedings. *Id.*

At the conclusion of the hearing, the BOI unanimously voted to separate Plaintiff from the Navy on each of thirteen enumerated counts of misconduct and substandard performance of duty and recommended that Plaintiff's discharge be characterized as "Other than Honorable." AR452-54. Accordingly, Plaintiff's official discharge certificate identified that he was discharged from the Navy "Under Other than Honorable Conditions" on the basis of "Misconduct (Sexual Perversion)." AR455.

After the BOI proceeding concluded, the Supreme Court denied Plaintiff's petition for a *writ of certiorari* on direct appeal. *United States v. Lewis*, 558 U.S. 867 (2009). Plaintiff subsequently filed a motion in the trial court, pursuant to 28 U.S.C. § 2255, challenging the validity of his conviction and sentence. *United States v. Lewis*, 1:07-cr-119 (D.D.C.), Dkt. 54. In an order and memorandum opinion dated November 16, 2011, the district court denied Plaintiff's motion. *Id.* at Dkt. 106. That denial was subsequently affirmed by the D.C. Circuit, and the Supreme Court again denied Plaintiff *certiorari*. *United States v. Lewis*, 824 F. Supp. 2d 169 (D.D.C. 2011), *aff'd*, 505 Fed. Appx. 1 (D.C. Cir.), *cert. denied*, 571 U.S. 943 (2013).

### 4. U.S. Court of Federal Claims

In August 2013, Plaintiff filed an action in the United States Court of Federal Claims, seeking back pay and benefits from the Navy or, in the alternative, separation pay. AR334-42. In an opinion and order issued on February 24, 2014, the U.S. Court of Federal Claims dismissed Plaintiff's claims. *Id.* The court held that an individual who is absent without leave from his

8

military service as a result of incarceration is not entitled to back pay. AR339. With respect to Plaintiff's alternative request for separation pay, the court held that it was without jurisdiction to entertain Plaintiff's request because the only possible relief would be to set aside the BOI determination, which was equitable relief that the U.S. Court of Federal Claims could not order. AR342. The court did, however, *in dicta*, note that it "disapproved" of the BOI to the extent that it proceeded without Plaintiff's physical presence. *Id.* at 340-41.

### 5. BCNR

#### a. Initial Decision

After his release from incarceration, Plaintiff—again, through counsel—filed an application with the BCNR on December 2, 2020. AR315-459. In his application, Plaintiff argued that the BOI erred in proceeding to separate him from naval service without his physical presence and sought to be reinstated to active duty, medically retired from the Navy, and awarded back pay. AR315, 325-29. The BCNR subsequently transmitted Plaintiff's application to two Navy components—the Office of Legal Counsel and the Senior Medical Advisor to the Secretary of the Navy—for the issuance of advisory opinions. AR211-19. Both components recommended against providing any relief to Plaintiff. *Id.*

On January 22, 2022, the BCNR issued a decision granting Plaintiff's application in part. AR183-86. Although the BCNR specifically accepted the Court of Federal Claims' prior *dicta* that the BOI erred by proceeding in the absence of Plaintiff's physical presence, the BCNR held that this error did not warrant any significant change to his military record. AR184. The BCNR explained that it had

> considered reinstating [Plaintiff] to active duty for the purposes of reconvening the BOI but th[at] relief was not requested by . . . [Plaintiff] and, more likely than not, w[ould] result in the same result for P[laintiff] due to the seriousness of his misconduct that resulted in a civilian conviction that is now final.

9

AR185. As such, the BCNR determined that it was in "Plaintiff's favor to change his narrative reason for separation [from "Misconduct (Sexual Perversion)" to "Secretarial Authority"] rather than order him into active service for another BOI. AR185-86. In so doing, the BCNR noted that "if [Plaintiff] should feel otherwise, he may always request reconsideration of th[e] Board's decision." *Id.*

### b. Reconsideration

On October 10, 2022, Plaintiff submitted a request for reconsideration with the BCNR, urging the BCNR to "reconsider the appropriate remedy for the finding that [Plaintiff's BOI] was conducted improperly and reinstate him to his rank at the time of his erroneous discharge." AR492. In a written decision issued on May 17, 2023, the BCNR denied reconsideration. AR480-84. Of importance here, the BCNR affirmed its prior determination that the appropriate remedy for the error in the BOI hearing was a simple change of the rationale for separation, not reinstatement. AR480-84.

### 6. The Instant Case

Following the BCNR's denial of his request for reconsideration, on August 15, 2023, Plaintiff filed the instant suit against Defendant Carlos Del Toro ("Defendant"), in his official capacity as Secretary of the Navy, seeking judicial review of the Board's refusal to reinstate him to active duty. Dkt. 1. On November 10, 2023, Plaintiff moved for summary judgment, Dkt. 16, and on December 1, 2023, Defendant filed a cross-motion for summary judgment, Dkt. 19. Plaintiff then filed an Opposition to Defendant's Motion on December 13, 2023, Dkt. 22, and Defendant subsequently filed a Reply in support of his Motion on December 22, 2023, Dkt. 23.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In APA actions, however, the typical summary judgment standard is modified because judicial review of an agency's decision is limited to the underlying administrative record, which contains all of the facts relevant to the court's review. *See* 5 U.S.C. § 706. Unless a party contradicts some portion of the administrative record, "[t]he key difference in an APA case is that 'the presence or absence of a genuine dispute of material fact is not an issue.'" *LivinRite, Inc. v. Azar*, 386 F. Supp. 644, 650 (E.D. Va. 2019) (quoting *Hyatt v. U.S. Patent & Trademark Office*, 146 F. Supp. 3d 771, 780 (E.D. Va. 2015)). Unlike the consideration of traditional Rule 56 dispositions, in APA cases involving review of agency action, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Shipbuilders Council of Am. v. U.S. Dep't of Homeland Sec.*, 770 F. Supp. 2d 793, 802 (E.D. Va. 2011) (internal citations omitted).

  The APA provides that agency decisions may be set aside "if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983). A court reviewing final agency action asks whether the agency's "written opinion made a 'rational connection' between that evidence and its conclusion." *Downey v. U.S. Dep't of the Army*, 110 F. Supp. 3d 676, 687 (E.D. Va. 2015) (quoting *Ohio Valley Envtl. Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)), *aff'd sub nom. Downey v. United States Dep't of the Army*, 685 F. App'x 184 (4th Cir. 2017). And though a "court must consider whether the agency considered the relevant factors and whether a clear error of judgment was made[,]" *Aracoma Coal Co.*, 556 F. 3d at 192, under the law "[t]he court is not empowered to substitute its judgment for that of the agency[,]" *Friends of Buckingham v. State Air Pollution Control Bd.*, 947 F.3d 68, 80 (4th Cir. 2020) (quoting *Appalachian Voices v. State Water Control Bd.*, 912 F.3d 746, 753 (4th

Cir. 2019)). This is especially so where "discretionary action is involved." *Nat'l Org. v. Secretary*, 330 F.3d 1345, 1349 (Fed. Cir. 2003).

Notably, an even higher standard applies to Article III judicial review of a decision issued by a military correction board. Specifically, decisions of the BCNR are reviewed pursuant to an "unusually deferential application of the arbitrary or capricious standard of the APA." *Downey*, 110 F. Supp. 3d at 686 (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)). This added layer of deference guards against the danger that a court may act as a "super correction board," *Charette v. Walker*, 996 F. Supp. 43, 50 (D.D.C. 1998), or "a forum for appeals by every soldier dissatisfied with [a board's decisions] . . . ." *Cone*, 223 F.3d at 793. In applying this heightened deferential standard, a court may only set aside the "most egregious" decisions. *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989).

## III. ANALYSIS

A final decision of a military records correction board, like the decision of the BCNR here, is indisputably "final agency action" and therefore judicially reviewable under the APA. *See Flue-Cured Tobacco Coop. Stabilization Corp. v. E.P.A.*, 313 F.3d 852, 857 (4th Cir. 2002) ("Other than agency action made specifically reviewable by statute, § 704 limits the APA's non-statutory right of judicial review to final agency action."). In the instant case, Plaintiff argues that the Navy erred in separating him from naval service without ensuring his physical presence at the BOI proceeding and that the BCNR's refusal to correct that error by reinstating him was arbitrary and capricious. Dkt. 17 at 9-10. Defendant, in turn, maintains that the BCNR's decision to uphold Plaintiff's separation and reject his requested remedy of reinstatement was proper under the APA. Dkt. 20 at 18-23. Having reviewed the administrative record, this Court finds that the BCNR's choice of remedy withstands judicial scrutiny.

At the threshold, this Court recognizes that military correction boards are permitted by statute to exercise significant discretion in determining what remedy to provide (or, indeed, whether any remedy is necessary at all) for a particular "error" or "injustice." *See* 10 U.S.C. § 1552(a) ("The Secretary of a military department may correct any military record of the Secretary's department when the Secretary *considers it necessary* to correct an error or remove an injustice." (emphasis added)); *see also Kreis*, 866 F.2d at 1514 ("The Secretary may, in other words, have a reason for considering that it is not necessary to alter an applicant's military record in order to correct even an undisputed error or to remove even a conceded injustice."); *Powers v. Donley*, 844 F. Supp. 2d 65, 70-71 (D.D.C. 2012) (recognizing that a military secretary "may choose to let 'even an undisputed error . . . or a conceded injustice' stand if he does not believe it necessary to correct it").

Considering the wide latitude that the BCNR enjoys when it comes to fashioning a remedy, Plaintiff here falls far short of demonstrating that the BCNR's remedial selection constitutes the type of "egregious" decision-making warranting vacatur by this Court. The administrative record in the case at bar indicates that the BCNR contemplated reinstating Plaintiff to active duty but elected against that remedy based on its determination that, because of Plaintiff's criminal convictions, his separation from naval service was a foregone conclusion even with his physical presence at a BOI hearing. AR185.[2] In this way, the BCNR reasonably "exercis[ed] [its] discretion not to correct an error upon which nothing turns by reason of . . . lack of harm to the

---

[2] Indeed, Plaintiff's own counsel conceded at the BOI hearing that once Plaintiff had exhausted all avenues of review for his federal convictions, separation would readily be warranted pursuant to Navy policy. *See* AR417-18 ("If we had a definitive answer to whether or not those crimes had been committed, I would encourage you to separate Ensign Lewis this morning, and I would encourage you to separate him with an other than honorable discharge. As someone who wears the uniform, I don't know that there's any other choice.").

13

person in question . . . ." *Kreis*, 886 F.2d at 1514.  And on reconsideration, the BCNR appropriately reaffirmed that "it was in the interests of justice to maintain its decision to change [Plaintiff's] narrative reason for separation as Secretarial Authority" so as to remove the stigma that might follow from the prior designation.  AR483.

Plaintiff nevertheless contends that it was arbitrary and capricious for the BCNR to refuse to reinstate him to active duty after previously "acknowledging in a prior decision that it was appropriate and just to reinstate [P]laintiff if he so requested."  Dkt. 17 at 9.  In making this assertion, however, Plaintiff misconstrues the BCNR's initial decision.  The administrative record clearly demonstrates that the BCNR concluded that it would *not* be proper to reinstate Plaintiff to active duty for a new BOI because doing so would not change the result and also noted—as an additional reason—that Plaintiff had not actually requested the remedy of reinstatement in his initial BCNR application.  *See* AR185 ("The Board considered reinstating P[laintiff] to active duty for the purposes of reconvening the BOI but this relief was not requested by . . . P[laintiff] *and*, more likely than not, will result in the same result for P[laintiff] due to the seriousness of his misconduct that resulted in a civilian conviction that is now final." (emphasis added)).

Still, Plaintiff maintains that, if the BCNR had found reinstatement improper, it would not have explicitly invited him to request reinstatement on reconsideration.  Dkt. 22 at 2; *see also* AR185 ("[The BCNR] determined it was in P[laintiff's] favor to change his narrative reason for separation rather than order him into active service for another BOI.  However, if P[laintiff] should feel otherwise, he may always request reconsideration of this Board's decision.").  But, once again, Plaintiff's argument is not supported by the record.  Although there does appear to be some ambiguity as to which aspect of its decision the BCNR was specifically expressing a willingness

14

to reevaluate,[3] the BCNR's final decision sheds light on this question.  On reconsideration, the BCNR affirmed its initial decision and specifically invited Plaintiff to ask the Board "to change [the narrative reason for separation] back to the original narrative reason, if [he] f[elt] the new narrative reason create[d] an injustice in [his] record."  AR483.  This second invitation for reconsideration thus suggests that the BCNR's statement in its initial decision ("if P[laintiff] should feel otherwise") was likewise in reference to the BCNR changing Plaintiff's narrative reason for separation.  AR185.  Accordingly, this Court sees no reason to reverse the BCNR's decision under the "unusually deferential" standard governing review here.  *Downey*, 110 F. Supp. 3d at 686 (quoting *Cone*, 223 F.3d at 793).

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment (Dkt. 16) is DENIED and Defendant's Motion for Summary Judgment (Dkt. 19) is GRANTED.

The Clerk is directed to enter judgment for Defendant pursuant to Federal Rule of Civil Procedure 58 and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
June 28, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[3] This Court acknowledges that one could read the BCNR's initial decision and be unsure of whether the statement "should [Plaintiff] feel otherwise" was in reference to the BCNR's decision that reinstatement was not an appropriate remedy or its decision to change the narrative reason for Plaintiff's separation.  AR185.